# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD L. FLANDERS, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> v. ) <br> ) <br> FRED DZUGAN, *an adult individual, and* ) <br> FORD CITY BOROUGH, *a Pennsylvania* ) <br> *Municipal Corporation*, ) <br> ) <br> Defendants. ) | Civil Action No. 12-1481 <br> Hon. Nora Barry Fischer |

## **MEMORANDUM ORDER**

Presently before the Court is Plaintiff's "Motion to Strike Expert Report and Exclude Opinion Testimony of Susan Tymoczko" under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-93 (1993). (Docket No. 95). Each party submitted briefing and the Court held oral argument on the Motion on May 7, 2015. Afterwards, each party submitted supplemental briefing. (Docket Nos. 121, 127). The Motion is now ripe for disposition.

### I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Edward L. Flanders, Jr. ("Flanders") owns and operates a business, ELF Appliance & Service, in Ford City Borough that sells and services home appliances. (Docket No. 105 ¶ 1). The Defendants in this lawsuit are the Ford City Borough ("the Borough") and Fred Dzugan ("Dzugan"), a former Building Code Official in Ford City. (*Id.* at ¶ 2). Flanders brought this lawsuit under 42 U.S.C. § 1983 for alleged constitutional violations arising out of the building permit approval process. (Docket No. 22). In defending the lawsuit, Defendants submitted an Expert Report

1

("Report") from Susan Tymoczko ("Tymoczko"). (Docket Nos. 91, 91-1). Tymoczko is a Senior Planner in the Division of Strategic Planning of the Pittsburgh Department of City Planning. (Docket No. 99). Plaintiff filed a *Daubert* Challenge to strike the Report and preclude Tymoczko from testifying, arguing that her testimony is not based on reliable methods and that she is not qualified to render an expert opinion. (Docket Nos. 95, 96). Given the facts and circumstances of this case and in light of the standard, Plaintiff's Motion is granted in part and denied in part.

On July 28, 2005, seeking to construct a 10' x 54' addition onto his existing business, Flanders submitted to Dzugan an Application for Permit to Erect a New Building or Structure. (Docket No. 22 ¶ 5). While Dzugan granted an initial permit for the foundation of the building, Flanders' application for the second permit needed to finish construction was denied for failure to submit professional blueprints. (*Id.* at ¶¶ 8, 14). Nevertheless, Flanders continued construction on the addition. (*Id.* at ¶ 16). A protracted and contentious saga then ensued between Flanders and Dzugan. Dzugan issued a total of four criminal citations to Flanders, as well as a stop work order. (Docket No. 22 ¶¶ 18-46); (Docket No. 111 at 4). Flanders vigorously contested these citations, taking multiple appeals of several. (Docket No. 22 ¶¶ 18-46). Flanders filed the present lawsuit against Dzugan and Ford City Borough in 2012. (Docket No. 1).

The Amended Complaint alleges claims for (1) deprivation of substantive due process in violation of the Pennsylvania Constitution; (2) deprivation of Fourteenth Amendment substantive due process rights pursuant to 42 U.S.C. § 1983; (3) retaliation for exercising rights protected by the Pennsylvania and United States Constitutions; (4) deprivation of equal protection under the Pennsylvania Constitution; (5) deprivation of equal protection pursuant to § 1983; and (6) malicious prosecution under Pennsylvania law. (Docket No. 22). In support of his equal protection claims,

Flanders points to a number of other properties in the Borough which he alleges are comparators. These properties, according to Flanders, are similarly situated to his property and received more favorable treatment from Dzugan.[1] (Docket No. 111 at 17-18). For example, one building in Ford City was converted from a residential property to a commercial property to house the business "Jitterbug Java." (Docket No. 112 ¶¶ 98-102). The owners also constructed a ramp to the building. (*Id.*). Dzugan (1) allowed construction of the ramp even though he was not certified to do so, and (2) despite having not received professional blueprints, allowed the conversion project to be completed and Jitterbug Java to operate under a Temporary Certificate of Occupancy for five years before eventually requiring the submission of blueprints. (Docket No. 112 ¶¶ 98-102); (Docket No. 120 at 2). At issue for the equal protection claim is whether these other properties and the circumstances surrounding their interactions with Dzugan, are sufficiently similar to Flanders' to qualify as similarly situated. Also at issue is whether Dzugan had a rational basis for his actions towards Flanders.

## II.    EXPERT CREDENTIALS AND REPORT

Defendants retained Tymoczko to render an expert opinion regarding the alleged comparator properties and the reasonableness of Dzugan's actions taken with regard to Flanders. (Docket No. 127 at 2). As noted, Tymoczko is a "Senior Planner" in the Division of Strategic Planning of the Pittsburgh Department of City Planning. (Docket No. 99). She has held that particular position since

---

[1] An equal protection claim under a "class of one" theory requires a plaintiff to show that he was treated differently from others who are similarly situated. *Bernett v. Redevelopment Authority of the County of Washington*, 2013 U.S. Dist. LEXIS 181510, *6-7 (W.D. Pa. 2013) ("While a claim under the Equal Protection Clause usually involves the disparate treatment of a class of individuals, such a claim can be brought by a 'class' of a single individual, where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.") (citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

July 2014. (Docket No. 91-2). She has worked for the Pittsburgh Department of City Planning as either a "Senior Planner" or "Zoning Administrator" since January 1988. (*Id*.). From 1980-1988 she worked as a "Planner" for the Division of Community Planning. (*Id*.). Tymoczko received her Master of Urban and Regional Planning from the University of Pittsburgh's Graduate School of Public and International Affairs in 1978 and her Bachelor of Science in Earth Science from Clarion State College. (*Id*.). Tymoczko has provided expert testimony one other time in the past four years. She testified as an expert regarding a conditional use application for a natural gas well in Mount Pleasant, Pennsylvania, before the Mount Pleasant Board of Supervisors earlier this year. (Docket No. 91-1).

Ms. Tymoczko details her findings and conclusions in her Expert Report. The Report starts with a "Chronology of Events" section wherein she summarizes the facts of the case. (*Id*. at 1-2). She then describes the "purpose and scope" of the various municipal ordinances and codes that govern zoning and building permits. (*Id*. at 2). The Report then provides an evaluation of Dzugan's actions. (*Id*. at 3-5). It also compares the circumstances and his handling of Flanders' property with that of the alleged comparator properties. (*Id*. at 3-5). Tymoczko concludes that "Mr. Dzugan discharged his responsibilities as Ford City's Building Code Official in a conscientious and consistent manner" and his "interpretation, administration and enforcement of the applicable zoning and building codes following [sic] the applicable and acceptable practices in our industry." (Docket No. 91-1 at 5).

Plaintiff brings this *Daubert* Challenge, asking the Court to strike Tymoczko's Report and exclude her testimony at trial. (Docket No. 95). Plaintiff claims that the Report should be stricken as it will not assist the jury with specialized knowledge, it contains unsupported legal conclusions and lacks a reliable method, and Ms. Tymoczko is not qualified as an equal protection expert. (Docket

No. 96). Defendants submit that she is qualified and that her report simply "analyzes the factual differences between Plaintiff's property and alleged 'similarly-situated' properties in conjunction with Defendant Dzugan's administration of his duties as Ford City's building code official." (Docket No. 99 at 5). Plaintiff chose to neither depose Tymoczko nor retain his own expert. (Docket No. 127 at 3 n.2).

### III. LEGAL STANDARD

Federal Rule of Evidence 702, which memorializes the Supreme Court's landmark case *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the basic framework for the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if
> (1) the testimony is based upon sufficient facts or data,
> (2) the testimony is the product of reliable principles and methods, and
> (3) the witness has applied the principles and methods reliably to the facts of the case.

FED.R.EVID. 702. The United States Court of Appeals for the Third Circuit has held that "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citations omitted). "[T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury." *Id*. In this role, the district court is not the finder of fact but must focus on the methodology of the expert in order to "satisfy itself that 'good grounds' exist for the expert's opinion." *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004)

(citing *Daubert*, 509 U.S. at 590); *In re TMI Litigation*, 193 F.3d 613, 713 (3d Cir. 1999) (district court should not conflate "its gatekeeping function with the fact-finders' function as the assessor of credibility"). "The District Court has broad discretion in determining the admissibility of evidence, and 'considerable leeway' in determining the reliability of particular expert testimony under *Daubert*." *Walker v. Gordon*, 46 Fed.Appx. 691, 694 (3d Cir. 2002) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152-53 (1999)).

"Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility." *Kannankeril v. Terminix Intern., Inc.*, 128 F.3d 802, 806 (3d Cir. 1997). The party that proffers the expert testimony is not required to prove to the court that the expert's conclusion is correct. *See Mitchell*, 365 F.3d at 244 (citing *Ruiz–Troche v. Pepsi Cola Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998) (citations omitted)). The focus is on the process and methodology employed by the expert. *Id.* The party proffering the expert must only demonstrate that the expert arrived at his or her conclusion in a reliable manner. *Id.*; *see also Kannankeril*, 128 F.3d at 809 ("The trial judge must be careful not to mistake credibility questions for admissibility questions.").

Finally, the party asserting the admissibility of the proffered testimony has the burden to demonstrate, by a preponderance of the evidence, that the opinions are based on "good grounds." *Kannankeril*, 128 F.3d at 807. "In a case such as this, where an expert is proffered to testify regarding non-scientific matters, '[t]he relevant reliability concerns [will] focus upon personal knowledge [and] experience' of the witness and the methodology used will be applying that experience to the facts of the case." *Jackson v. City of Pittsburgh*, 2010 WL 3222137 at *9 (W.D. Pa. 2010) (citing *Roberson v. City of Philadelphia*, 2001 WL 210294 at *5, n. 10 (E.D. Pa. 2001)).

IV.   ANALYSIS

Plaintiff raises three principle arguments that the Report should be stricken. (1) It will not assist the jury with specialized knowledge; (2) it contains unsupported legal conclusions and no reliable method; and (3) Ms. Tymoczko is not qualified as an equal protection expert. (Docket No. 96). In evaluating each of these arguments, the Court is mindful of the "liberal policy of admissibility" of Rule 702.

Aside from challenging Tymoczko's qualifications and the substance of her Report, Plaintiff argues that her testimony will not assist the jury because the Uniform Construction Code ("UCC") and municipal building codes are "subjects that are within the common knowledge and understanding of the average man." (Docket No. 96 at 10). In support, Flanders asserts that "[t]here are no references to 'specialized knowledge' in Ms. Tymoczko's conclusions." (*Id*.). As discussed below, Tymoczko's expertise comes from her three decades of experience in the field of city planning and her application of this experience to the present case. The Court is not persuaded by Plaintiff's argument that zoning and building codes are so simple that a city planner with over thirty years of experience would not be of any help to a jury.

Plaintiff next avers that Tymoczko's Report lacks a reliable method. (Docket No. 96 at 5). For experts on non-scientific matters, the reliability determination focuses on the Expert's personal knowledge and experience and "the methodology used will be applying that experience to the facts of the case." *Jackson*, 2010 WL 3222137 at *9. Tymoczko has over 30 years of experience working in the city planning field and a master's degree in Urban and Regional Planning. (Docket No. 91-2). The Court finds this to be more than ample knowledge and experience to satisfy the reliability requirement from *Daubert*. Tymoczko's methodology is applying her extensive experience to the facts of this case. *See Jackson*, 2010 WL 3222137 at *9. She is sufficiently qualified to testify to the

UCC, municipal building codes, the process she uses in performing her job and how it compares factually to what Dzugan did in this case, and the factual differences and similarities between the alleged comparator properties and Flanders' property.

Plaintiff makes much of the fact that Tymoczko did not include specific citations to the record in the body of her Report. (Docket No. 121 at 4). However, as Defendants point out, the Addendum to the Report lists eleven sets of information used by Tymoczko in formulating her opinion. (Docket No. 91-1 at 6). Among other materials, these sources include relevant provisions of the UCC, the depositions of Flanders and Dzugan, Flanders' building permit applications and building permit, and documentation relating to the alleged comparator properties. (*Id.*). Such materials would clearly be relevant in evaluating the factual differences between Flanders' property and the alleged comparator properties, as well as Dzugan's performance of his official duties. The lack of line-by-line citations in the body of the Report does not mean her analysis is baseless; the Addendum explains the basis for her opinion. To the extent Plaintiff is concerned about Tymoczko not looking at specific sources, such as not visiting the properties in person, Plaintiff is free to cross-examine Tymoczko regarding same. *Universal Underwriters Ins. Co. v. Dedicated Logistics, Inc.*, 2014 WL 7335668 at *14 (W.D.Pa. 2014); *Corner Pocket, Inc. v. Travelers Ins.*, 2013 WL 3993967 at *6 (W.D.Pa. 2013); *Carnegie Mellon University v. Marvell Technology Group, Ltd.*, 2012 WL 5989194 at *3 (W.D.Pa. 2012). Between the sources cited in the Addendum to the Report and the application of her extensive experience in the area of zoning, the Court is satisfied that Tymoczko's testimony is based on a sufficiently reliable method.

Plaintiff further argues that Tymoczko is not qualified as an equal protection expert. (Docket No. 96 at 5). While this is undoubtedly accurate, the Court is not persuaded that Ms. Tymoczko

professes to be an equal protection expert or that Defendants seek to use her as such. Instead, Defendants present Tymoczko as a building code expert. (Docket No. 127 at 2) ("Defendants retained Ms. Tymoczko to opine on the factual distinctions between Plaintiff's property and that of the alleged comparators, and notwithstanding those factual distinctions, to evaluate Defendant Dzugan's handling of Plaintiff's application for a building permit."). Indeed, Tymoczko's Report, (Docket No. 91-1), does just this. Pages 3-4 analyze the factual differences between the alleged comparator properties and Flanders', as well as Dzugan's handling of same. (*Id.*). These opinions are inherently factual and are not legal conclusions regarding equal protection. The Court further notes that Tymoczko does not mention the phrase "equal protection" a single time in her Report. *See generally* (*Id.*). Nor is there a single mention of anything relating to either the United States Constitution or the Pennsylvania Constitution. *See generally* (*id.*). While Ms. Tymoczko's testimony may bear on the jury's consideration of the equal protection claim, that does not mean she will be testifying as an equal protection expert. *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 245 (3d Cir. 2008) (Finding the district court, in a failure to warn case, should have permitted an engineering expert to testify that the product should have included a warning, even though he was not a warnings expert. "[Expert] did not purport to opine on how the warning should be worded or how it should appear in order to effectively convey its message to an automobile technician. He only testified that neglecting to follow the steps of an instruction . . . might result in failure . . . and that a warning was necessary to alert a technician to the potential problem."). This case is similar. Tymoczko's Report does not say that Dzugan's actions did not meet the legal definition of equal protection. *See generally* (*id.*). She submits, that based on her thirty years of zoning experience, Dzugan acted appropriately and that the alleged comparator properties were meaningfully different from the

Flanders property. *See* (*id.* at 3-5) (describing the factual differences between Flanders' and each of the other properties).

Only Tymoczko's qualifications and methodology are before the Court in this *Daubert* Challenge. *In re TMI Litigation*, 193 F.3d at 665 ("The analysis of the conclusions themselves is for the trier of fact when the expert is subjected to cross-examination.")(quoting *Kannankeril*, 128 F.3d at 806). In its discretion the Court finds that her Report consists of factual analysis grounded on her professional experience, as outlined in her Resume and Report, on which she is qualified to opine. Plaintiff may very well disagree with Tymoczko's conclusions; as noted above, Plaintiff's remedy is cross-examination. *See Universal Underwriters Ins. Co.*, 2014 WL 7335668 at *14; *Corner Pocket, Inc.*, 2013 WL 3993967 at *6; *Carnegie Mellon University*, 2012 WL 5989194 at *3. Defendants are warned that Tymoczko will not be permitted to testify to legal conclusions regarding equal protection.

## V. CONCLUSION

Tymoczko will be permitted to testify at trial as a Rule 702 witness, subject to certain limitations. Her testimony shall be limited to her background, the UCC and its application and enforcement, building codes generally, and the process she uses in performing her job and how it compares factually to what Dzugan did in this case. Given that it has been represented that she has reviewed documentation about the alleged comparator properties, she may also comment on the factual differences and similarities between Flanders' property and same.[2] She will not be permitted to testify to the merits of any alleged equal protection claim. In addition, to the extent she opines in her Report regarding the "conscientiousness" and reasonableness of Dzugan's actions, these

10

characterizations are, in the Court's estimation, more properly left to the jury. Plaintiff's other concerns can be adequately addressed through cross-examination. *See Universal Underwriters Ins. Co.*, 2014 WL 7335668 at *14; *Corner Pocket, Inc.*, 2013 WL 3993967 at *6; *Carnegie Mellon University*, 2012 WL 5989194 at *3.

AND NOW, this 24th day of July, 2015, for the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's "Motion to Strike Expert Report and Exclude Opinion Testimony of Susan Tymoczko," (Docket No. 95), is GRANTED in part and DENIED in part. Tymoczko will be permitted to testify regarding her background, the UCC and its application and enforcement, building codes generally, the process she uses in performing her job and how it compares factually to what Dzugan did in this case, and the factual differences and similarities between the alleged comparator properties and Flanders' property.

IT IS FURTHER ORDERED that Tymoczko shall not testify to the merits of any alleged equal protection claim or the "conscientiousness" and reasonableness of Dzugan's actions.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: All counsel of record

---

[2] The Court would note though, it may have been better practice to have Ms. Tymoczko actually view these properties in person.