# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD L. FLANDERS, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> v. ) <br> ) <br> FRED DZUGAN, *an adult individual, and* ) <br> FORD CITY BOROUGH, *a Pennsylvania* ) <br> *Municipal Corporation*, ) <br> ) <br> Defendants. ) | Civil Action No. 12-1481 <br> Hon. Nora Barry Fischer |

## **MEMORANDUM ORDER**

Presently before the Court is Plaintiff's Motion for Sanctions for Spoliation of Evidence. (Docket No. 114). Each party submitted briefing, (Docket Nos. 115, 122, 125, 126), and the Court held a hearing and argument on the Motion on July 10, 2015, (Docket No. 128). The official transcript has been filed, (Docket No. 133), and the Defendants have supplemented the record with an affidavit, (Docket No. 136). The Court also requested and reviewed the full deposition transcripts of Defendant Fred Dzugan and Borough Solicitor Frank Wolfe. (Docket Nos. 129, 130, 131). The Motion is now ripe for disposition.

Plaintiff Edward L. Flanders, Jr. ("Flanders") owns and operates a business, ELF Appliance & Service, in Ford City Borough that sells and services home appliances. (Docket No. 105 ¶ 1). The Defendants in this lawsuit are the Ford City Borough ("the Borough") and Fred Dzugan ("Dzugan"), a former Building Code Official in Ford City. (*Id.* at ¶ 2). Flanders brought this lawsuit under 42 U.S.C. § 1983 for alleged constitutional violations arising out of the building permit approval

1

process. (Docket No. 22). Plaintiff filed a Motion for Sanctions alleging Defendants failed to preserve evidence relevant to the case. (Docket No. 114). Plaintiff avers that emails were lost as a result of Defendants' failure to institute a litigation hold and that Defendants failed to preserve documentation relating to the permit application of another building in the Borough. (Docket No. 115). Given the facts and circumstances of this case and in light of the standard, Plaintiff's Motion is denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

On July 28, 2005, seeking to construct a 10' x 54' addition onto his existing business, Flanders submitted to Dzugan an Application for Permit to Erect a New Building or Structure. (Docket No. 22 ¶ 5). While Dzugan granted an initial permit for the foundation of the building, Flanders' application for the second permit needed to finish construction was denied for failure to submit professional blueprints. (*Id.* at ¶¶ 8, 14). Nevertheless, Flanders continued construction on the addition. (*Id.* at ¶ 16). A protracted and contentious saga ensued between Flanders and Dzugan. Dzugan issued a total of four criminal citations to Flanders, as well as a stop work order. (Docket Nos. 22 ¶¶ 18-46, 111 at 4). Flanders vigorously contested these citations, taking multiple appeals of several. (Docket No. 22 ¶¶ 18-46). Flanders filed the present lawsuit against Dzugan and Ford City Borough in 2012. (Docket No. 1).

The Amended Complaint alleges claims for: (1) deprivation of substantive due process in violation of the Pennsylvania Constitution; (2) deprivation of Fourteenth Amendment substantive due process rights pursuant to 42 U.S.C. § 1983; (3) retaliation for exercising rights protected by the Pennsylvania and United States Constitutions; (4) deprivation of equal protection under the Pennsylvania Constitution; (5) deprivation of equal protection pursuant to § 1983; and (6) malicious

prosecution under Pennsylvania law. (Docket No. 22).

Disagreement between Flanders and Dzugan began in 2006. (Docket No. 115 at 3). This lawsuit was filed in 2012. (Docket No. 1). Discovery in this case closed in 2014 but the Court granted Plaintiff's Motion to Reopen Discovery. (Docket No. 68). The Court held a hearing regarding the Motion to Reopen Discovery on May 21, 2014 and ordered that "[t]o the extent that Defendants have implemented a litigation hold, evidence of same shall be filed . . ." (Docket No. 59). Defendants never filed evidence of a litigation hold and it appears as though they never instituted one. (Docket No. 115 at 3). Plaintiff filed the pending Motion for Sanctions for Spoliation of Evidence on June 5, 2015. (Docket No. 114).

## II. MOTION FOR SANCTIONS FOR SPOLIATION

Plaintiff's Motion alleges two distinct instances of spoliation. (Docket No. 115 at 4). First, Plaintiff alleges that Defendants failed to institute a litigation hold which may have resulted in the loss of emails relevant to the case. (*Id.*). Second, Plaintiff alleges that the Borough failed to comply with state law and failed to retain the building permit records of another business in Ford City. (*Id.* at 4-6). Plaintiff avers that there may have been evidence covered by both of these discovery requests that was lost or destroyed as a result of Defendants' failure to preserve evidence. (*Id.*). For sanctions, Plaintiff requests an adverse inference at trial. (*Id.* at 8). Defendants respond that the basis for Plaintiff's Motion is entirely speculative with regard to ESI, (Docket No 126 at 1-2), and that the building permit records in question never existed in the first place, (Docket No. 136). The Court will address the alleged ESI spoliation and the alleged spoliation of building permit records in turn.

### i. ESI SPOLIATION

As noted above, the Court ordered Defendants to file evidence of any litigation hold they had

put in place for this lawsuit. (Docket No. 59). Defendants never filed any such evidence, and it appears to be undisputed that they never put a litigation hold in place. (Docket No. 115 at 3). Plaintiff provides two bases for a charge of spoliation for lack of a litigation hold. First, Plaintiff argues that the emails recovered from the email accounts that were searched cannot possibly be all the emails relating to Flanders. (*Id*. at 4). Second, he argues that additional email accounts were never searched at all. (Transcript 51:11).

The parties filed a Joint ESI Protocol Status Report with the Court on October 3, 2014. (Docket No. 80). In this joint status report, the parties agreed that they would "initially focus their search" on the email of four Borough employees: Lisa Bittner (the Borough's Secretary), Frank Wolfe (the Solicitor), Mr. Wolfe's wife (who works as his secretary)[1], and Defendant Dzugan. (Docket No. 80); (Docket No. 115 at 4). From these four individuals, Defendants turned over a total of 33 emails relating to Flanders and the events giving rise to this litigation. (Docket No. 115 at 4). In one of these emails between Dzugan and Solicitor Wolfe, Dzugan writes, referring to Flanders, that he is "[g]etting tired of him." (*Id*.). Plaintiff avers that there may have been other similar emails. (*Id*.) ("In failing to institute a litigation hold, it is plausible that Borough employees, Council members, and Dzugan deleted relevant ESI containing information regarding Flanders."). Defendants respond that the basis for Plaintiff's Motion is entirely speculative and that there is no evidence that any additional emails were destroyed or even existed in the first place. (Docket No. 126 at 1-2).

Plaintiff's second argument for ESI spoliation is that Defendants did not even search the email accounts of several other Borough employees. (Transcript 51:11). At the hearing, Plaintiff's counsel tendered to the Court ten pages of the emails that were produced by Defendants. (Docket No.

128-2). As these emails show, several were sent to a number of people, including individuals other than the four borough employees whose emails were searched. (*Id*.). Plaintiff avers that the emails of these other individuals should also have been searched for information relating to Flanders. (Transcript 51:11, 55:8-13). In response, Defendants point to the October 3, 2014 joint status report wherein the parties agreed to limit the search to the emails of the four borough employees. (Transcript 59:12-22).

### ii. SPOLIATION OF NITE COURTS RECORDS

The second allegation of spoliation is that the Borough lost or destroyed records relating to the building permit request of another business in Ford City. (Docket No. 115 at 4-6). During discovery, Plaintiff requested any and all documents relating to the permit application for a porch and roof addition at a local bar and restaurant named "Nite Courts." (Docket No. 115 at 5). Plaintiff sought discovery of same as a possible comparator property for his equal protection claim.[2] (*Id*.). Defendants turned over no such records in discovery. (*Id*.). According to Defendants, there are no documents relating to the permitting of Nite Courts. (*Id*. at 6). Plaintiff avers that "[i]t is plausible that documents pertaining to Nite Courts would have, once again, shown that other landowners were receiving favorable treatment from the Borough, while Flanders was being criminally prosecuted and subjected to Dzugan's pattern of abuse." (*Id*.).

Plaintiff argues that failing to preserve records relating to a building permit application would

---

[1] The Court notes that neither Lisa Bittner nor Frank Wolfe's wife were deposed.
[2] An equal protection claim under a "class of one" theory requires a plaintiff to show that he was treated differently from others who are similarly situated. *Bernett v. Redevelopment Auth. of the Cnty. of Washington*, Civ. No. 13-1409, 2013 U.S. Dist. LEXIS 181510, *6-7, 2013 WL 6881960, at *2 (W.D. Pa. 2013) ("While a claim under the Equal Protection Clause usually involves the disparate treatment of a class of individuals, such a claim can be brought by a 'class' of a single individual, where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.") (citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

5

be a violation of a state law. (*Id*. at 4-6). The Municipal Records Manual, issued in 2009 by the Pennsylvania Historical and Museum Commission Bureau of Archives and History, requires local governments to preserve records such as building permit applications and building permits. (Docket No. 115-3 at 7, Excerpt from Municipal Records Manual). At oral argument, Plaintiff's counsel submitted photos of Nite Courts before and after the renovation. (Docket Nos. 128-3, 128-4). As the Court noted on the record, the photos appear to show "that significant work" was performed on the roof of the building. (Transcript 69:16-21); *see also generally* (Docket Nos. 128-3, 128-4). The fact that the Borough does not have any records relating to a permit application by Nite Courts means that either these records were lost or Nite Courts either never applied for a permit or Dzugan allowed a relatively significant renovation without a permit of any kind. Following oral argument, Defendants submitted an affidavit from Patricia Angiulli, the owner of Nite Courts. (Docket No. 136). Ms. Angiulli submits that she "did not consult with Fred Dzugan or any Ford City official during the contemplation or construction of the pitched roof at Nite Courts." (*Id*.).

The Court notes that neither party chose to take a 30(b)(6) deposition of Nite Courts nor did either party depose its owner. (Transcript 48:14-16).

### III. LEGAL STANDARD

"'Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Swindell Dressler Int'l Co. v. Travelers Cas. and Surety Co*., 827 F. Supp. 2d 498, 505 (W.D. Pa. 2011) (quoting *Victor v. Lawler*, Civil Action No. 3:08-cv-1374, 2011 U.S. Dist. LEXIS 115908, 2011 WL 4753527, *1 (M.D. Pa. Oct. 7, 2011)). In order for spoliation to be established, it must be shown that: (1) the evidence was in the party's control; (2) the evidence is relevant to the claims or defenses

in the case; (3) there has been actual suppression or withholding of evidence; and (4) the duty to preserve the evidence was reasonably foreseeable to the party. *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (citation omitted). The party who seeks a spoliation sanction bears the burden of proving these factors. *See Universal Underwriters Ins. Co. v. Dedicated Logistics, Inc.*, Civ. No. 11-1153, 2014 U.S. Dist. LEXIS 177249, 2014 WL 7335668 (W.D. Pa. 2014); *McCann v. Kennedy Univ. Hosp.*, Civ. No. 12-1535, 2014 U.S. Dist. LEXIS 9074, 2013 WL 282396, at *4 (D.N.J. Jan. 24, 2014); *Stream Cos., Inc. v. Windward Adver.*, Civil Action No. 12-cv-4549, 2013 U.S. Dist. LEXIS 100319, 2013 WL 3761281, at *2 (E.D. Pa. July 17, 2013) (*citing Williams v. Klem*, No. 07-1044, 2010 U.S. Dist. LEXIS 99764, 2010 WL 3812350, at *2 (M.D. Pa. Sept. 22, 2010)).

If it is determined that spoliation of evidence has occurred, the Court must determine an appropriate sanction. *Universal Underwriters Ins. Co.*, 2014 U.S. Dist. LEXIS at *13-14. Three key factors must be considered in this regard, namely: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994); *see also Bull*, 665 F.3d at 74 n.5 (quoting *Schmid*). When appropriate, a court may impose any potential sanction including dismissal of a claim or granting judgment in favor of a prejudiced party, suppression of evidence, an adverse inference (referred to as the spoliation inference), fines, and attorneys' fees and costs. *Swindell Dressler Int'l Co.*, 827 F. Supp. 2d at 507 (citing *Victor*, 2011 WL 4753527 at *2).

With respect to actual suppression of evidence, the Third Circuit has clarified that a court

7

must determine that the relevant actor suppressed or withheld the evidence in bad faith. *Bull*, 665 F.3d at 79; *see also Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir.1995) ("No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for."); 29 Am.Jur.2d Evidence § 177 ("Such a presumption or inference arises, however, only when the spoliation or destruction was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent."). A finding of bad faith is therefore "pivotal" to a spoliation determination. *Bull*, 665 F.3d at 79 ("[W]e must be convinced that the District Court, on sufficient evidence, found that Bull intended to actually withhold the original documents from UPS before we can conclude that sanctionable spoliation occurred.").

## IV. ANALYSIS

### i. ESI SPOLIATION

Plaintiff is correct that Defendants should have put a litigation hold in place. *See Swindell Dressler Int'l Co.*, 827 F. Supp. 2d at 506 ("[a] party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence") (citations omitted). As noted above, disagreement between Flanders and Dzugan began as early as 2006 and eventually came to involve a significant amount of litigation even predating this lawsuit. (Docket No. 22 ¶¶ 18-46); (Docket No. 111 at 4); (Docket No. 115 at 3). Defendants were on notice of the possibility of this lawsuit long before its filing. Accordingly, Defendants had an affirmative duty to preserve relevant evidence and thus should have instituted a litigation hold. *Swindell Dressler Int'l Co.*, 827 F. Supp. 2d at 506.

The other elements of a spoliation claim, however, are not satisfied here. A proper spoliation

8

claim requires the moving party to set forth evidence with specificity. In the absence of a showing that specific evidence was "destroyed in order to prevent it from being used by the adverse party, a spoliation instruction is improper." *U.S. v. Nelson*, 481 Fed. Appx. 40, 42 (3d Cir. 2012); *see also Bensel v. Allied Pilots Ass'n*, 263 F.R.D. 150, 153 (D.N.J. 2009) ("Such a catch-all statement, along with vague speculation as to whether evidence has been destroyed or even whether evidence was relevant does not rise to the specificity level required by the Third Circuit to impose sanctions or even make a finding of spoliation."). This includes a showing of bad faith. *See Universal Underwriters Ins. Co.*, 2014 U.S. Dist. LEXIS at *13-14. Here, the only thing Plaintiff can say with any specificity is that Defendants do not appear to have put a litigation hold in place. Plaintiff cannot show any evidence was actually lost or destroyed. Plaintiff also cannot show that if evidence was lost or destroyed, it would have been beneficial to his case. Instead, Plaintiff's Brief relies on inferences that such evidence must have existed, and thus must have been lost as a result of Defendants' failure to institute a litigation hold. (Docket No. 115 at 4) ("In failing to institute a litigation hold, it is *plausible* that Borough employees, Council members, and Dzugan deleted relevant ESI containing information regarding Flanders.") (emphasis added). Plaintiff points to the email in which Dzugan states that he is "[g]etting tired of [Flanders]." (*Id.*) ("It is *hard to believe* that additional e-mails do not exist that contain similar sentiments regarding Flanders, when one such obvious example came to light.") (emphasis added). Such an assumption is insufficient to establish a spoliation claim. *See Giuliani v. Springfield Township*, Civ. No. 10-7518, 2015 U.S. Dist. LEXIS 74174, 2015 WL 3604343 *7-8 (E.D. Pa. 2015) (denying a spoliation motion where "[p]laintiffs have not set forth any proof that defendants in fact failed to preserve emails . . ."). It also does not necessarily follow that, because there was one such email, there must have been others. If anything, the fact that Defendants

produced the "[g]etting tired of him" email indicates there was no concerted effort to delete such emails.

Nor can Plaintiff show bad faith. It is true that the Borough's record keeping appears to have been rather slipshod. Based on the deposition testimony of Solicitor Wolfe, Ford City has no set policy despite knowledge among Borough officials regarding statutes requiring them to retain certain records. (Docket No. 131, Deposition of Frank Wolfe, 20:5-7, 21:23-25). Furthermore, a lot of deference was given to Borough Secretary Lisa Bittner in responding to discovery requests for this lawsuit. (*Id*. 19:3-18). As noted above, Bittner was never deposed as part of this litigation. Although sloppy, in the Court's estimation, this does not rise to the level of bad faith, particularly given the size and resources of Ford City and the fact that Solicitor is a part-time position. *See Bozic v. City of Washington, Pa.*, 912 F.Supp. 257, 270 (W.D.Pa. 2012) (finding sanctions for spoliation warranted where the party's conduct "rises well above inadvertence, negligence, inexplicable foolishness, or part of the normal activities of business or daily living, any of which arguably fall outside of the spoliation definition set forth in *Bull*."). With regard to Defendants' discovery responses, the Court notes that Wolfe did review the information compiled by Bittner before turning it over to Flanders' attorneys. (Wolfe Dep. 19:19-25).

The case law simply does not support a finding of spoliation based on the present facts and circumstances. Plaintiff has not cited a single case where a court ordered an adverse inference with nothing more concrete than a failure to institute a litigation hold or anything similar. He points to only the *Culler* case, out of the Middle District of Pennsylvania, as support for his position. (Docket No. 115 at 3-4) (citing *Culler v. Shinseki*, Civ. No. 09-305, 2011 U.S. Dist. LEXIS 96043; 2011 WL 3795009 (M.D. Pa. 2011)). *Culler* involved similar facts to the present case, with the plaintiff filing a

spoliation motion against the defendant for failing to preserve ESI. *Culler*, 2011 U.S. Dist. LEXIS 96043 at *3. While the Court in *Culler* appears to have concluded that the defendant's actions constituted spoliation, it went on to conclude that sanctions were not appropriate and denied the motion on the grounds that plaintiff could not show anything besides a failure to preserve ESI. *Id*. at *24-25. In no case in the Third Circuit cited by Plaintiff, or found by this Court, has a court granted a spoliation inference on nothing more than a failure to institute a litigation hold.

Defendants' failure to search the emails of other individuals associated with Ford City similarly fails to rise to the level of spoliation. As an initial matter, it is not clear that the simple omission of failing to search certain email accounts even raises a spoliation issue, rather than a discovery issue that would have been better resolved with a motion to compel. *See Swindell Dressler Int'l Co*., 827 F. Supp. 2d at 507 ("Spoliation is the *destruction* or *significant alteration* of evidence, or the *failure to preserve* property for another's use as evidence in pending or reasonably foreseeable litigation." (citations omitted) (emphasis added)). Regardless, it appears that Plaintiff never asked Defendants to search these individuals' email addresses. *See* (Docket No. 80, Joint Status Report regarding ESI, agreeing to "initially focus their search" on the email of the four Borough employees). Plaintiff's counsel admitted at oral argument that not subpoenaing the providers of the email addresses outside control of the Borough was a "litigation decision." (Transcript 65:13-15). It is not clear how Plaintiff's "litigation decision" to not request emails from certain individuals constitutes spoliation on the part of Defendants. Moreover, a spoliation inference is not intended as a remedy to correct the moving party's failure to request everything it needs in discovery. *See Durst v. FedEx Express*, Civ. No. 03-5186, 2006 U.S. Dist. LEXIS 36031, 2006 WL 1541027 at *4 (D.N.J. 2006) (finding spoliation sanctions were not appropriate in "what amounts to a simple discovery dispute"

that should have been raised during discovery through a motion to compel).

To the extent Plaintiff argues that Defendants' failure to institute a litigation hold also constitutes spoliation with regard to the emails of these other individuals, the same analysis as to the absence of a litigation hold applies. The Court finds the Spoliation Motion lacking in specificity and a showing of bad faith and denies the Motion with regard to the ESI.

### ii. SPOLIATION OF NITE COURTS RECORDS

Plaintiff's second allegation of spoliation pertains to the lack of records relating to a building permit and application for Nite Courts. (Docket No. 115 at 4-6). Because it appears now that such records never existed, the Court will also deny the Motion with respect to same.

As noted above, the fact that the Borough does not have any records relating to a permit application by Nite Courts means that either these records were lost or Nite Courts never submitted a building permit application. At the July 10, 2015 hearing and argument, counsel for Defendants indicated that he thought that the owner of Nite Courts never applied for a permit application and that he would try and submit an affidavit to that effect. (Transcript 74:1-2). On August 17, 2015 Defendants filed such an affidavit. (Docket No. 136). The Affidavit from Patricia Angiulli, the owner of Nite Courts, states that in 2011 the roof of the building began to leak. (*Id*. ¶¶ 1-2). She consulted with roofing contractors, who concluded that the leakage problem could be fixed by erecting a pitched roof over top of the existing flat roof. (*Id*. ¶ 3). She also avers that the contractors "advised that erecting a pitched roof on top of the existing flat roof constituted a 'repair' that did not require a building permit." (*Id*. ¶¶ 4). She further avers that she never consulted with Dzugan or any other Ford City official regarding the repair, nor did she file a building permit application of any kind. (*Id*. ¶¶ 8-9). As of this writing, there has been no request to depose her by Defendants' counsel.

Finding no reason to doubt the truthfulness of her sworn statement, the Court will presume, for the purposes of this Spoliation Motion, that Ms. Angiulli's representations are accurate. If she never applied for a building permit for Nite Courts, there were no records for the Borough to lose or destroy. Accordingly, while this may or may not bolster Flanders' argument that Nite Courts is a comparator property for his equal protection claim at trial, spoliation of evidence has not occurred.

## V. CONCLUSION

Plaintiff's Motion for Sanctions for Spoliation of Evidence is denied with respect to both the ESI and the Nite Courts records. While Ford City's record keeping appears to have been rather slipshod, Plaintiff has not demonstrated bad faith or the sufficient specificity necessary to prevail on a spoliation motion. With regard to Nite Courts, there cannot be spoliation of evidence that never existed.

AND NOW, this 24th day of August, 2015, for the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion for Sanctions for Spoliation of Evidence, (Docket No. 114), is DENIED.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: All counsel of record